WEBSTER TRUST ET AL. *v.* RUSSELL C.
ROLY, SR., ET AL.
(SC 16584)

Sullivan, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

Argued February 14—officially released August 6, 2002

*Frederick P. Leaf*, with whom, on the brief, was *Susan King Shaw*, for the appellants (defendant Gerald S. Adinolfi et al.).

*Pasquale Young*, with whom was *Jason DeGenaro*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, C. J. Initially, the sole issue in this certified appeal was whether the Appellate Court properly determined that an offer to purchase land for significantly less than fair market value was a bona fide offer, so as to trigger the plaintiffs' right of first refusal. Upon further review, however, we determine that the dispositive issue is whether the trial court acted properly in declining to order specific performance of the agreement to convey the property for a fraction of the property's fair market value. The plaintiffs, Webster Trust[1] and Pasquale Young, the trustees of a family

---

[1] Webster Trust is the successor trustee to Sachem Trust Company, which was a successor trustee to the original trustee, Lafayette Bank and Trust Company.

trust established by their decedent, John Lescovich, commenced this action in the Superior Court against the defendants, Russell C. Roly, Sr., and Eleanor Augur Roly (Rolys) and Ruth A. Adinolfi and Gerald S. Adinolfi (Adinolfis) seeking specific performance of an agreement that gave the plaintiffs' decedent a right of first refusal to purchase certain real property. The trial court rendered judgment for the defendants, finding, inter alia, that there was no bona fide offer, and that the right of first refusal, therefore, was not triggered. Acting in part on the basis of this determination, the trial court refused to grant specific performance to the plaintiffs. The plaintiffs appealed to the Appellate Court, which reversed the judgment of the trial court. *Webster Trust* v. *Roly*, 64 Conn. App. 233, 780 A.2d 142 (2001) (*Hennessy, J.*, dissenting). We granted the defendants' petition for certification to appeal; *Webster Trust* v. *Roly*, 258 Conn. 915, 782 A.2d 1253 (2001); and now reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts. "On July 5, 1977, the [Rolys] conveyed 9.84 acres of real property in North Branford to John Lescovich, who now is deceased. On September 26, 1977, the Rolys entered into a written agreement with Lescovich (agreement), which stated, in part, that the Rolys 'agree to give [Lescovich] personal notice of any bona fide offer to purchase any or all of' the real property (land) they own in North Branford.[2] The agreement was duly recorded in the land records of North Branford. Lescovich died in March, 1994, and the 9.84 acres and the agreement were devised by order of the Probate Court on November 13, 1997, to the family trust that had been created by Lescovich.

---

[2] The property at issue in this appeal consists of a 21.27 acre tract of unimproved land situated to the west of the 9.84 acre parcel purchased by Lescovich, the plaintiffs' decedent.

"On April 9, 1997, [the Adinolfis][3] signed a standard real estate agreement form, offering to purchase the [21.27 acre parcel] for $100,000 [from the Rolys]. The Rolys accepted the offer by signing the agreement form on April 14, 1997. At the time, Russell C. Roly, Sr., was acting as Eleanor Augur Roly's conservator, and he secured approval from the Probate Court for Eleanor Augur Roly's estate to sell the land for $100,000. According to Ruth A. Adinolfi, the attorney that the Adinolfis [had] retained to represent their interests in the transaction knew that there might be a preemptive option with respect to the land. On June 30, 1997, the Rolys, acting through Russell C. Roly, Sr., conveyed all of the land to the Adinolfis in consideration of $100,000. Russell C. Roly, Sr., received $50,000 and Eleanor Augur Roly's estate received $50,000.

"Frances Lescovich, Lescovich's widow and sole beneficiary of the trust, has lived continuously on the 9.84 acres since Lescovich purchased it in 1977. Frances Lescovich learned of the Rolys' conveying the land to the Adinolfis in September, 1997. In October, 1997, the plaintiffs commenced this action, seeking to enforce the agreement. The action sought damages against Russell C. Roly, Sr., a judgment of specific performance requiring the Adinolfis to convey the land to the trust in consideration of $100,000 or, in the alternative, an order that the Adinolfis create a constructive trust of the land for the benefit of the trust." Id., 235–37. Prior to trial, the plaintiffs withdrew their claim for damages against the estate of Russell C. Roly, Sr., who had died during the pendency of the action. Id., 234 n.1. As a result, the sole issue remaining at the time of trial was the plaintiffs' claim seeking specific performance of a

[3] Ruth A. Adinolfi is the daughter of Eleanor Augur Roly and the stepdaughter of Russell C. Roly, Sr. Gerald S. Adinolfi is Ruth A. Adinolfi's husband and the Rolys' son-in-law.

$100,000 transfer from the Adinolfis, for the plaintiffs' benefit.

"Following the presentation of evidence, the [trial] court found that there was no bona fide offer from the Adinolfis to the Rolys that triggered the notice provision of the agreement, that the plaintiffs' interpretation of the terms of the agreement was not reasonable or realistic, that $100,000 was not equitable consideration for the real property because it was substantially less than its market value and that the plaintiffs failed to prove they did not receive notice in accordance with the agreement." Id., 237–38.

The plaintiffs appealed from the judgment of the trial court. The Appellate Court, with one judge dissenting, reversed the judgment of the trial court and remanded the matter for further proceedings; id., 246; determining, inter alia, that the trial court was clearly erroneous in finding that the Adinolfis' offer to purchase the land was not bona fide.[4] Id., 243.

Thereafter, we granted the defendants' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the offer to purchase the land in question was a bona fide offer, so as to trigger the plaintiffs' right of first refusal?" *Webster Trust* v. *Roly*, supra, 258 Conn. 915. We determine after further review, however, that the bona fides of the offer itself is not dispositive of this case. Rather, the dispositive issue is whether, under the circumstances of this case, the trial court acted properly in declining to order specific performance of the

[4] The Appellate Court also addressed the following issues on appeal that are not relevant to the issue presently before us: whether the trial court improperly concluded "that the plaintiffs failed to prove that they did not receive notice pursuant to the agreement at issue, in part, because the court improperly refused to admit into evidence a third party complaint, and . . . that the agreement was unreasonable and unrealistic." *Webster Trust* v. *Roly*, supra, 64 Conn. App. 235.

agreement to convey the property for a fraction of the property's fair market value. We conclude that the trial court properly concluded that it would be inequitable to grant the plaintiffs specific performance. Accordingly, we reverse the judgment of the Appellate Court.

Under the terms of the agreement between Lescovich and the Rolys, the Rolys were required to give personal notice to Lescovich, who was succeeded by the plaintiffs as trustees, of any bona fide offer to purchase the property, thereby triggering the plaintiffs' right of first refusal[5] to purchase the property upon the same terms and conditions.[6]

On appeal, the defendants claim that the Appellate Court improperly concluded that the Adinolfis' offer was bona fide. The plaintiffs claim, conversely, that

---

[5] "Terminology in cases involving pre-emptive rights has been somewhat loose and therefore subject to criticism." (Internal quotation marks omitted.) *Hare* v. *McClellan*, 234 Conn. 581, 588, 662 A.2d 1242 (1995). For consistency, we refer to the interest at issue in this case as a right of first refusal.

[6] "The agreement states: 'FOR ONE DOLLAR AND OTHER VALUABLE CONSIDERATIONS, We Russell Roly and Eleanor Roly both of the Town of North Branford, County of New Haven and State of Connecticut (hereinafter referred to as the Grantors) do give and grant to JOHN LESCOVICH (hereinafter referred to as Grantee) of said North Branford and to his heirs, successors and assigns a right of first refusal to purchase all of the land owned by Grantors located in said Town of North Branford and situated to the west of land conveyed by the Grantors to the Grantee on the date of this instrument. The Grantors agree to give the Grantee personal notice of any bona fide offer to purchase any or all of said land and the Grantee shall give notice to the Grantor within twelve (12) hours of the receipt of notice by him of his intention to buy any such land upon the same terms and conditions contained in any such bona fide offer to purchase any of the land referred to in this agreement.

" 'The Grantors agree to convey any land covered by this agreement by warranty deed free and clear of all encumbrances if the right of first refusal is exercised by the Grantee. This agreement shall continue in force during the life of the Grantee and for twenty-one (21) years thereafter, and is binding on the heirs, successor and assigns of the parties hereto.

" 'IN WITNESS WHEREOF, the parties have hereunto set their hands and seals at New Haven, Connecticut this 26th day of September, 1977." *Webster Trust* v. *Roly*, supra, 64 Conn. App. 235–36 n.4.

the Appellate Court properly determined that the trial court's finding that the Rolys had not received a bona fide offer to purchase the property was clearly erroneous.[7] We conclude that, for the purposes of this case, the bona fides of the Adinolfis' offer is of no moment, because we conclude further that the trial court acted within its discretion in determining that it would be inequitable, under the circumstances of this case, to grant specific performance.

"[A]n action for specific performance of a contract to sell real estate is an equitable action and is to be determined by equitable principles. . . . The granting of specific performance of a contract to sell land is a remedy which rests in the broad discretion of the trial court depending on all of the facts and circumstances when viewed in light of the settled principles of equity. . . . *Frumento* v. *Mezzanotte*, 192 Conn. 606, 615, 473 A.2d 1193 (1984)." (Internal quotation marks omitted.) *Cutter Development Corp.* v. *Peluso*, 212 Conn. 107, 114, 561 A.2d 926 (1989); *Natural Harmony, Inc.* v. *Normand*, 211 Conn. 145, 149, 558 A.2d 231 (1989); *Smith* v. *Hevro Realty Corp.*, 199 Conn. 330, 345, 507 A.2d 980 (1986). If, under the circumstances, specific performance would be inequitable, the relief to be accorded rests in the trial court's sound discretion, to be exercised in light of the equities of the case and using reason and sound judgment. *Schneidau* v. *Manley*, 131

---

[7] "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Internal quotation marks omitted.) *Pequonnock Yacht Club, Inc.* v. *Bridgeport*, 259 Conn. 592, 598, 790 A.2d 1178 (2002). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Melillo* v. *New Haven*, 249 Conn. 138, 151, 732 A.2d 133 (1999), quoting *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 70, 699 A.2d 101 (1997); see also *Crowder* v. *Commissioner of Correction*, 66 Conn. App. 864, 867, 786 A.2d 439 (2001) (not appellate court's role to second-guess trial court on questions of fact).

Conn. 285, 289, 39 A.2d 885 (1944); see also *Nann* v. *Pignatelli*, 3 Conn. App. 74, 80, 485 A.2d 922 (1984).

The trial court found that Ruth A. Adinolfi is the Rolys' daughter and had lived on the property for most of her life. The trial court further found that the $100,000 offer represented a fraction of the property's fair market value of $340,000.[8] We agree with the trial court that it would be unreasonable and inequitable for the plaintiffs, as successors to Lescovich, to be permitted to purchase this property for the $100,000 purchase price paid by the Rolys' daughter and her husband. Although the agreement provided that Lescovich would be entitled to purchase the property on the same terms and conditions as those offered by another potential purchaser and did not specify any minimum purchase price, the trial court could have properly concluded that a sale, or really, an intrafamilial transfer, of the property for a price less than one third of its fair market value was not within the reasonable expectations of the parties. The trial court, in the exercise of its equitable powers, was entitled to consider the facts that the offer for a fraction of the fair market value was made by a child of one of the property owners, who had lived on the property for most of her life, and that the plaintiffs never exhibited an interest in the property until they believed they could purchase the property for a price well below market value. We note, as an additional consideration, that the right of first refusal was not released upon the transfer of the property to the Adinolfis and remains on the land at least until 2015; the plaintiffs will continue to be protected by it until then. See footnote 6 of this opinion. When, and if, the Adinolfis decide to sell the property in the market place before the expiration of the right, the plaintiffs may then exercise it.

---

[8] The record reveals that an appraisal of the property, dated May 7, 1998, showed a value of $340,000.

On the basis of the foregoing, we conclude that the trial court did not abuse its discretion in refusing to grant specific performance.

The judgment of the Appellate Court is reversed and the case is remanded to the Appellate Court with direction to affirm the trial court's judgment.[9]

In this opinion the other justices concurred.

---

[9] A review of the Appellate Court briefs leads us to conclude that there remain no unresolved issues for the Appellate Court to consider. In their brief to the Appellate Court, the plaintiffs raised the following issues:

"1. Did the trial court err in failing to find as a matter of law that the plaintiffs' right of first refusal option to purchase the land was reasonable?

"2. Did the trial court err in concluding that the expectation of the plaintiffs to purchase the property for the price paid by a daughter of the grantors is unreasonable and inequitable?

"3. Did the trial court err in concluding that the equities of the case did not entitle the plaintiffs to a decree of specific performance?

"4. Did the trial court err in failing to declare a constructive trust concerning the ownership of the land in dispute?

"5. Did the trial court err in refusing to take judicial notice of a third party complaint filed by the Adinolfi defendants?

"6. Did the trial court err in refusing to admit evidence of a third party complaint filed by the Adinolfi defendants?

"7. Did the trial court err in finding that the grantee of the right of first refusal 'at no time up to his death showed any interest in the land?' "

The present opinion disposes of the first three issues in light of our conclusion that the trial court acted within its discretion in determining that a decree of specific performance would be unreasonable and inequitable. The fourth, fifth and sixth issues raised by the plaintiffs likewise do not need to be addressed because of our determination that the right of first refusal remains in effect on the property until at least 2015 and the plaintiffs, therefore, remain protected by it. Finally, the seventh issue also does not require further attention because of our conclusion that the trial court did not abuse its discretion with regard to its equitable findings.